Being unable to agree with the majority, I respectfully dissent.
It is clear upon a review, that the commission, in denying the PTD application of relator, relied upon the reports of Dr. DeChellis, Dr. Rosenberg, and Dr. Klein. It is even more clear that relator's physical impairments do not come close to the degree of impairment usually associated with those eligible for PTD compensation. Thus, we are confronted upon review with the adequacy of the commission's consideration of nonmedical factors.
While there is divergent opinion in the record regarding relator's lack of education and his abilities to seek and gain employment in the marketplace, there is adequate consideration given by the commission to relator's age, education, and work record. The majority seems to find fault with the decision of the commission and the magistrate's recommendation due to a claim that relator is illiterate and therefore precluded from any job opportunities. However, the commission, while recognizing relator's educational deficiencies, considered that his limited education was sufficient to enable him to perform entry level jobs. In this regard, the vocational expert was not required to specifically identify jobs relator could perform. Additionally, the evidence reveals relator would be fully capable, with vocational training, to engage in remunerative employment. Under such circumstances, I cannot conclude the commission abused its discretion. I would therefore overrule relator's objections, adopt the recommendation of the magistrate, and deny the requested writ of mandamus. Since the majority decides otherwise, I respectfully dissent.
 IN MANDAMUS
Relator, Okey Burns, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied relator's application for permanent total disability ("PTD") compensation, and ordering the commission to issue an order finding that he is entitled to that compensation.
Findings of Fact:
1. Relator has sustained several work-related injuries during the course of his employment and his claims have been allowed as follows:
 * * * Low back sprain, lumbar disc herniation at the L5-S1 level.
 * * * Acute eczema upper left and right thigh, acute eczema left and right waist, acute eczema right and left lower leg.
* * * Dermatitis, most of body.
* * * Thoracic strain.
 * * * Fracture middle proximal phalanx, hand closed left third finger.
The main claim involved in relator's application for PTD compensation involves the low back sprain and lumbar disc herniation at the L5-S1 level.
2. On November 21, 2000, relator filed an application for PTD compensation. On his application, relator indicated that he could not read, write, or do basic math.
3. Relator submitted the reports of his treating physician, Dr. Robert D. Zaas, who opined as follows:
 Based on physical findings on examinations of June 16, 2000 and again today, the abnormal lumber MRI scan of 11/2/99 and the lack of any available treatment that would significantly improve his low back condition, it is my opinion that Mr. Burns is permanently and totally physically impaired from all types of work including his former job at the City of Conneaut as well as other types of employment for which he is experienced, qualified or trained.
Dr. Zaas completed a physical capacities evaluation and indicated that relator could sit for three hours during an eight hour workday, could stand and walk for two hours during an eight hour workday; could frequently lift or carry up to ten pounds and occasionally lift or carry up to twenty pounds; could use his hands for repetitive actions such as simple grasping, pushing and pulling of arm controls with the right hand but not with the left as well as fine manipulation with both the right and left hand; could use his right foot for repetitive movements as in the pushing and pulling of leg controls but not his left; cannot bend, squat or crawl, however, he can occasionally climb and frequently reach; and is moderately restricted from activities involving unprotected heights and mildly restricted from activities involving being around moving machinery, exposure to market changes in temperature humidity, driving automotive equipment and exposure to dust, fumes and gases.
4. The record contains the July 14, 2000 report of Dr. E.A. DeChellis. After discussing his physical findings, in reviewing the other medical evidence in the record, Dr. DeChellis opined that relator had reached maximum medical improvement; that surgery is not indicated at this time; that conservative therapy has yielded limited results; that relator is unable to return to his former position of employment without restrictions, but he would be able to return to work if restrictions were in place. Those restrictions include not lifting greater than twenty-five pounds on a repetitive basis and not performing repetitive bending. Aside from those two restrictions, Dr. DeChellis opined that relator could return to his former position of employment.
5. Relator was examined by Dr. David M. Rosenberg who issued a report dated March 27, 2001. Dr. Rosenberg opined that relator had a nineteen percent whole person impairment for all the allowed conditions; that he could probably intermittently lift up to ten pounds in a sedentary capacity involving sitting most of the time as long as he could get up and move around. Except for activities including his lower extremities, such as pushing or pulling leg controls, Dr. Rosenberg opined that relator could perform most job capacities under a sedentary work activity.
6. Relator filed a vocational report prepared by Stephen A. Kushnick, Ph.D. Dr. Kushnick administered several different tests to relator and ultimately concluded as follows:
 The current evaluation indicates that at Burns' level of intel-lectual capability, namely borderline intellectual functioning with an estimated full-scale IQ of 78, he would only be capable of learning new work routines on the job itself in areas which traditionally require a good deal of physical effort. Based upon his IQ and limited functional skill levels, jobs such as general labor, factory work, stock work, material handling and fast food sales would be considered applicable. However, according to medical information, as well as Burns' self-description, he is unable to do the bending, lifting, walking, standing or even prolonged sitting that these jobs require. In that his intellectual level suggests he would be unable to handle sedentary jobs for which the application of academic capabilities would pertain, this evaluator feels that there are no jobs in the local environment for which Burns can qualify based upon physical and intellectual capability, experience or training. Thus, in my professional opinion, Burns is seen as unable to compete for any types of gainful employment, and thus is deemed permanently and totally disabled within the Workers' Compensation definition.
7. An employability assessment report was prepared by Michael A. Klein, Ph.D. Based upon the reports of Dr. Zaas indicating that relator is permanently and totally disabled, Dr. Klein indicated that there were no employment options available for relator. Based upon Dr. Zaas' restrictions, Dr. Klein indicated that the following limited range of part-time work would be available to relator immediately or following appropriate academic remediation or brief skill training: "Cashier, hand packer, order filler, counter attendant[.] * * * Cashier, rental clerk, office clerk, retail sales." Based upon the report of Dr. Rosenberg, Dr. Klein indicated that relator could immediately perform the following additional jobs: "Microfiche operator, surveillance system monitor; inspector, order filler, cashier." Dr. Klein specifically indicated that relator's ability to perform other jobs following appropriate academic remediation or brief skill training was limited by relator's functional illiteracy. Dr. Klein indicated that relator's age should not be a factor in reemployment and that he had a good work history. With regard to relator's education, Dr. Klein noted that an eighth grade education should be sufficient for entry level work; however, relator stated that he could not read, write or do math. Dr. Klein indicated further that if functional illiteracy is confirmed, then remediation may be effected requiring visual demonstration of work tasks.
8. Relator's application was heard before a staff hearing officer on June 5, 2001, and resulted in an order denying his application. The commission relied upon the medical reports of Drs. Rosenberg and DeChellis and concluded that relator could perform some sustained remunerative employment within the restrictions provided by those doctors. The commission then addressed relator's nonmedical disability factors as follows:
 The claimant's age is 57, which, according to Michael Klein, places the claimant in the person of middle age category. Mr. Klein states that claimant's age is not a factor in the claimant obtaining employment.
 Claimant's education consisted of the eighth grade, Mr. Klein indicates claimant's education is sufficient for entry level work. The claimant has indicated that he cannot read, write, or do math.
 Claimant's work history consisted of employment as a heavy equipment operator, a press operator, and a mechanic. Mr. Klein finds that claimant's employment showed a good work history.
 The Staff Hearing Officer notes that the claimant only has an eighth grade education, but that his work experience indicates that he has no impairment as far as learning is concerned. There has not been any evidence presented to indicate that the claimant has attempted to seek a program to increase his education. The Hearing Officer finds that the claimant has not put forth a good faith effort to better himself so that he could be more eligible to find employment. The Hearing Officer finds that the claimant is still at an age in which he is capable of entering a program. The Hearing Officer finds that, since the claimant has no learning disability, his failure to continue his education and find employment within the restrictions placed on him by Dr. Rosenberg, and Dr. DeChellis precludes him from being found permanently totally disabled.
9. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm. (1967),11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond Foundry Co. (1987),29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165.
The relevant inquiry in a determination of permanent total disability is claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus. Comm. (1994), 69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments but, also, the claimant's age, education, work record and other relevant nonmedical factors. State ex rel. Stephenson v. Indus. Comm. (1987), 31 Ohio St.3d 167. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. State ex rel. Gay v. Mihm (1994),68 Ohio St.3d 315. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. State ex rel. Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203.
Relator contends that the commission's order is not supported by the evidence in the record. Specifically, relator contends that the commission did not consider the testing performed by Dr. Kushnick and its effect on relator's ability to engage in sustained remunerative employment, that the commission ignored the analysis from the Dictionary of Occupational Titles of all jobs listed by Dr. Klein in his employability assessment, and that the commission ignored the physical findings of relator's treating orthopedist, Dr. Zaas. Relator also argues that the commission failed to consider the nonmedical disability factors. For the reasons that follow, this magistrate finds that relator's arguments are not well-taken.
The commission is only required to list that evidence upon which the commission bases its decision. To the extent that relator contends that the commission's order is devoid of any evidence that the commission actually considered the reports of his doctor and his vocational expert, relator's argument fails. Relator cites Domjancic, supra,_and State ex rel. Cupp v. Indus. Comm. (1991), 58 Ohio St.3d 129, in support of his argument; however, those cases are distinguishable. In Domjancic, the court noted that the commission had enumerated all the evidence that was considered and had omitted the vocational report of Dr. Ruth. Today, courts apply the rationale from State ex rel. Fultz v. Indus. Comm. (1994), 69 Ohio St.3d 327, for the proposition that, where the commission endeavors to list all the evidence considered and fails to list the claimant's vocational report, an abuse of discretion has occurred and the matter must be remanded to the commission. However, in the present case, the commission only listed that evidence upon which it relied and the rationale from Domjancic and Fultz is inapplicable. Likewise, in Cupp, the claimant argued that the commission failed to consider the vocational report. However, in Cupp, the Ohio Supreme Court determined that the relevant inquiry was whether the commission had considered all the allowed conditions and remanded the order for clarification on that issue. As such, Cupp likewise does not apply.
Relator also contends that the commission did not properly analyze the nonmedical disability factors; however, this magistrate disagrees. Part of relator's argument centers upon his assertion that the commission was bound to accept the evidence from his vocational expert that he was illiterate and the impact of that illiteracy on his ability to seek employment. However, the commission specifically relied upon the vocational report of Dr. Klein who specifically noted that relator had stated that he could not read, write or do basic math and indicated that if functional illiteracy was confirmed, then remediation may be effected requiring visual demonstration of work tasks. In its order, the commission also indicated that relator had indicated that he could not read, write or do basic math. However, the commission agreed with Dr. Klein that his education was sufficient to enable him to perform basic entry level jobs and also noted that relator had made no attempts to seek to improve on his education. The commission and courts can demand accountability of a claimant who, despite time and medical ability to do so, never tried to further their education or learn new skills. State ex rel. Bowling v. Natl. Can Corp. (1996), 77 Ohio St.3d 148. The commission's analysis of the nonmedical factors was sufficient and relator has not demonstrated that the commission abused its discretion.
Basically, relator asks this court to reweigh the evidence and to reach a decision favorable to him. However, that is not the responsibility of this court. Having found that the commission listed evidence in support of its decision that relator maintains the physical capacity to performing sedentary work and because the commission's analysis satisfies the requirements of Noll and Stephenson, relator has not demonstrated that the commission abused its discretion in denying his application for PTD compensation.
Based on the foregoing, it is this magistrate's decision that relator has not demonstrated that the commission abused its discretion in denying his application for PTD compensation and relator's request for a writ of mandamus should be denied.